**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:98-CV-99-M**

| | |
|---|---|
| **NEW ENGLAND HEALTH CARE EMPLOYEES PENSION FUND, On Behalf of Itself and All Others Similarly Situated** | **PLAINTIFF** |
| **v.** | |
| **FRUIT OF THE LOOM, INC.; WILLIAM FARLEY; BERNHARD HANSEN; RICHARD C. LAPPIN; G. WILLIAM NEWTON; BURGESS D. RIDGE; LARRY K. SWITZER; and JOHN WIGODSKY,** | **DEFENDANTS** |

* * * * * * * * * * * *

**CIVIL ACTION NO. 1:00-CV-48-M**

| | |
|---|---|
| **BERNARD FIDEL, et al.** | **PLAINTIFFS** |
| **v.** | |
| **WILLIAM FARLEY and WILLIAM NEWTON** | **DEFENDANTS** |

**MEMORANDUM OPINION**

This matter is before the Court on Motions by Plaintiffs for Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Motions for an Award of Attorneys' Fees and Reimbursement of Expenses [DN 255, 1:98CV-99-M; DN 306, 1:00-CV-48-M]. A fairness hearing was conducted on March 3, 2006. Upon careful consideration of the motions, briefs, declarations, and exhibits filed in support of these motions, the Court GRANTS Plaintiffs' motions.

## I. BACKGROUND

On July 1, 1998, the New England Health Care Employees Pension Fund filed suit against the named defendants on behalf of all those who bought common Fruit of the Loom ("Fruit") stock from July 24, 1996 through September 5, 1997 (the class period). Named Defendants in the New England Action are Fruit of the Loom; William Farley, Fruit's former Chief Executive Officer; Bernhard Hansen, President of European Operations; Richard Lappin, President and Chief Operating Officer; G. William Newton, Fruit's Chief Financial Officer; Burgess D. Ridge, Senior Vice President of Administration; Larry K. Switzer, Senior Executive Vice President and former Chief Financial Officer; and John Wigodsky, Executive Vice President of Sales and Marketing. On March 28, 2000, the Court certified the Class and appointed New England as representative of the Class.

On March 22, 2000, Plaintiffs, Bernard Fidel, Yitz Grossman, Stanley Mical, and Arnold Simon, brought suit on behalf of all persons who acquired Fruit stock from September 28, 1998 through November 4, 1999 (the class period). Named Defendants in the Fidel Action are William Farley and G. William Newton.[1] On July 13, 2000, the Court consolidated a number of related lawsuits into the Fidel Action. On January 15, 2004, the Court certified the Class and appointed Bernard Fidel, Yitz Grossman, and Stanley Mical as representatives of the Class.

Plaintiffs in both the New England action and the Fidel action allege that the

---

[1] Plaintiffs originally sued Ernst and Young. The Court dismissed the claims against Ernst and Young on March 27, 2002.

Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, which prohibit fraudulent and material misrepresentations in the sale or purchase of securities. Generally, Plaintiffs claim that Defendants engaged in a continuing course of fraudulent conduct which had the effect of artificially inflating the market price of Fruit's stock throughout the respective class period. Plaintiffs allege that Defendants perpetrated this fraud by making a series of positive but false representations to the investing public about Fruit's financial condition and business practices, while concealing material adverse facts that contradicted the representations. Ultimately, in 1999, the company filed for Chapter 11 bankruptcy protection in a Delaware federal court.

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Settlement Terms and Notice

The Stipulation of Settlement in the New England action provides for a cash settlement of $23.2 million plus interest for the Class consisting of all purchasers of Fruit of the Loom common stock from July 24, 1996 through September 5, 1997. The Stipulation of Settlement in the Fidel action provides for a cash settlement of $19.1 million plus interest for the Class consisting of all purchasers of Fruit of the Loom stock between September 28, 1998 and November 4, 1999. In addition to paying claims of the class members, the Settlement Fund in both cases will be used to pay taxes; attorneys' fees and expenses; expenses of the Lead Plaintiffs; and administrative expenses, including the cost of providing notice to the Class, the cost of publishing newspaper notice, and costs associated with the

processing of claims submitted. The balance of the Settlement Funds will be distributed to claimants according to the Plan of Allocation. (DN 253, Order Preliminary Approving Settlement and Providing for Notice in the New England action, Exhibit 1);(DN 304, Order Preliminarily Approving Settlement and Providing for Notice in the Fidel action, Exhibit A-1.)

The current proposed settlements of these two cases were preliminarily approved by the Magistrate on December 16, 2005. Notices of the proposed settlements and the fairness hearing were provided in accordance with the Magistrate's Order. In both actions, 84 entities including major brokerage houses were sent claim packages along with a cover letter requesting the brokerage houses to forward the claim packages to the beneficiaries. In the New England action, claim packages were sent to over 11,568 potential class members. In the Fidel action, claim packages were sent to over 17,717 potential Class Members. Further, Summary Notices of the Proposed Settlements of the actions were published in *Investor's Business Daily* on December 23, 2005. The Court conducted a fairness hearing on March 3, 2006.

### B. Standard for Settlement Approval

Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before the case may be dismissed or compromised. "Three specific steps must be followed: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must determine whether the proposed settlement is fair, reasonable, and

adequate." Fussell v. Wilkinson, 2005 WL 3132321, *3 (S.D. Ohio November 22, 2005)(citing Williams v. Vukovich, 720 F.2d 909 (6th Cir.1983); Bronson v. Board of Education of the City School District of Cincinnati, 604 F. Supp. 68 (S.D. Ohio 1984); In Re Fernald Litigation, 1989 WL 267039, 2-3 (S.D. Ohio September 29, 1989)). Having satisfied the steps set forth above, the only remaining issue to be considered by the Court is whether the proposed settlement is fair, reasonable, and adequate.

"Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable." Fussell, 2005 WL 3132321, *3 (citations omitted). See also In re Cincinnati Policing, 209 F.R.D. 395 (S.D. Ohio. 2002)(quoting Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)). Courts generally consider a number of factors in assessing the fairness, adequacy and reasonableness of the proposed settlement including the following: (1) the potential relief that plaintiffs may realize following a full trial on the merits balanced against the relief offered by the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the status of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections of the class members; and (7) the public interest. See In re Cincinnati Policing, 209 F.R.D. 395 (S.D. Ohio. 2002); In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 522 (E.D. Mich. 2003); Williams, 720 F.2d at 922; Bronson, 604 F. Supp. at 73.

### C. Discussion

Evaluated under the applicable standards, this Court finds that the Settlements are a

fair, adequate, and reasonable resolution of these very complex cases.

The settlements of $23.2 million in the New England action and $19.1 million in the Fidel action appropriately reflect the merits of the litigation balanced against the significant risks of the Class not prevailing or, if they prevailed, the judgment being uncollectible. See Hicks v. Stanley, 2005 WL 2757792, *7 (S.D.N.Y. October 24, 2005). With these proposed settlements, Class members will obtain the immediate and certain benefit of a cash settlement. If Plaintiffs were to continue to litigate these cases, they face substantial risks both at summary judgment and at trial in establishing liability and damages. Defendants have maintained throughout this litigation that they acted in good faith and in reasonable belief in the truth of the statements made during the Class periods. Additionally, Plaintiffs' counsel noted that with respect to recovery in the Fidel action the insurance companies now funding the settlement had previously taken the position that there was no insurance coverage. Thus, additional litigation with respect to insurance coverage may have been necessary to collect a judgment in favor of Plaintiffs. Accordingly, the uncertainty related to the proof of the allegations in the complaint, the likely appeal if the Plaintiffs prevailed, the insurance coverage issue, and Fruit of the Loom's bankruptcy in December of 1999 creates a substantial risk that the Class would be unable to recover a greater amount even it prevailed at trial. This factor therefore weighs in favor of the settlements.

Consideration of the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlements. "Securities class actions are often 'difficult and . . . uncertain,'" Hicks, 2005 WL 2757792, * 6 (citing In re Sumitomo Copper Litig., 189

F.R.D. 274, 281 (S.D.N.Y. 1999)), and these cases are no exception. Although significant discovery has taken place, substantial additional effort and expense would be necessary to prepare both cases for trial, including completion of discovery and motions for summary judgment. "[C]ertain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." In re Cardizem CD Antitrust Litigation, 218 F.R.D. at 525 (E.D. Mich. 2003).

      The status of the proceedings and the amount of discovery completed also favor acceptance of the proposed settlements. Clearly, this is not a situation in which Plaintiffs' counsel decided to settle after a brief review of the cases. Instead, the New England case has been pending for over seven years and the Fidel case has been ongoing for over five years. In both cases, Plaintiffs' counsel litigated complicated motions to dismiss; litigated and obtained class certification; conducted extensive discovery, including the review and analysis of over one million documents; conducted detailed investigative interviews of 34 witnesses; and took at least 20 depositions. "Given this extensive discovery, the Court is mindful that it 'should defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 503 (E.D. Mich. 2000)(quoting Bronson, 605 F. Supp. at 73). In light of the well developed factual record, the Court finds that Plaintiffs' counsel understand the strengths and weaknesses of their position and are in an excellent position to assess the adequacy of the settlement proposal.

Furthermore, the Court finds that the settlement agreements are the product of arm's length negotiations between Lead Plaintiffs' counsel and Defendants' counsel. Capable and experienced counsel in class action and securities litigation represented both sides in reaching the settlement. Negotiations extended over a year in the New England action and over a year and a half in the Fidel action. The negotiations involved both retired Judge Nicholas Politan and Magistrate Judge E. Robert Goebel. A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" Hicks, 2005 WL 2757792, *5 (S.D.N.Y. October 24, 2005)(quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), cert. denied, 125 S.Ct. 2277 (2005)). Accordingly, this factor also weighs in favor of the settlements.

Likewise important is the fact that no objections to the proposed settlements were filed by any Class member, nor did any Class members appear at the fairness hearing to object to the settlement agreement.[2] As discussed above, copies of the Notice of Pendency and

---

[2] On March 8, 2006, the Court received an objection postmarked March 5, 2006, from Mr. James J. Hayes, a class member in the Fidel action. The Notice of the Proposed Settlement required all objections be filed on or before February 3, 2006.

Notwithstanding, Mr. Hayes does not appear to object to the substance of the settlement, but instead to the timeliness of the notice and the fee request of counsel. Essentially, Mr. Hayes complains that he did not receive the Notice of the Proposed Settlement until February 27, 2006. Mr. Hayes argues that Class counsel did not allocate sufficient time to print the notices and to obtain the names and addresses of the beneficial purchasers from the brokerage firms. As a result, Mr. Hayes requests the Court to require re-notification and the scheduling of a new settlement hearing. In the alternative, Mr. Hayes request the Court to reduce the attorneys' fee award.

Even assuming Mr. Hayes did not receive notice of the settlement until February 27, 2006, he does not explain why his objections were not postmarked until two days after the scheduled settlement hearing. The Court has not received any other letters indicating that notice was not

Settlement of Class Action were mailed to over 11,000 class members in the New England Action and to over 17,000 class members in the Fidel Action. Additionally, a summary notice was also published in *Investor's Business Daily*. The lack of objections is significant considering the size of these classes. Kogan, 193 F.R.D. at 503. Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." In re Cardizem CD Antitrust Litigation, 218 F.R.D. at 530 (citation omitted). Clearly, the public interest is served by the settlements since recovery has been obtained for such a large number of class members in the investing public.

For these reasons, the Court concludes that the proposed settlements including the plans of allocation, are fair, adequate and reasonable. The Court approves the proposed settlement and the plan of allocation in both the New England action and the Fidel action.

### III. ATTORNEYS' FEES AND EXPENSES

Plaintiffs' counsel in the New England action request 25 percent of the total settlement fund, $1,483,746.63 in expenses, and $5,000 in expenses for Lead Plaintiff, New England.

---

timely received. The notice of settlement requested the brokerage firms to provide the Claims Administrator with the names and addresses of the beneficial purchasers or to forward a copy of the Notice within ten (10) days of receipt of the notice. Given the declaration of Christl Hansman that notices in both actions were mailed to the brokerage firms on or before December 19, 2005, the Court concludes that the notices allowed members of the class a full and fair opportunity to consider the proposed settlement.

To the extent Mr. Hayes asserts that more information regarding the settlement should have been provided in the notice, he demands a level of specificity not required by Fed. R. Civ. P. 23(e) or the Private Securities Litigation Reform Act. Further, the notice of settlement informed the Class members that the case file could be inspected for a more detailed statement of the claims and settlement.

Plaintiffs' counsel in the Fidel action request 25 percent of the total settlement fund, $937,704.43 in expenses, and $7,500 each in expenses for Lead Plaintiffs, Bernard Fidel, Yitz Grossman, and Stanley Mical.

## A. Attorneys' Fees

*1. Standard*

It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). It is within the district court's discretion to determine the "appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before [it]." Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir.1993). Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach. Id. at 516-517. The overriding requirement is that the award "be reasonable under the circumstances." Id. at 516. See also Bowling v. Pfizer, Inc., 102 F.3d 777, 779 (6th Cir. 1996).

In Rawlings, the Sixth Circuit observed that the recent trend has been towards application of a percentage-of-the-fund method in common fund cases. Rawlings, 9 F.3d at 516-517; In re Cardizem DC Antitrust Litigation, 218 F.R.D. at 532 ( "[T]he Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases."). In In re Cardizem DC Antitrust Litigation, the district court observed that:

> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases.... [M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

218 F.R.D. at 532 (quoting Fournier v. PFS Investments, Inc., 997 F. Supp. 828, 832-33(E.D. Mich. 1998). Similarly, the district court in F & M Distribs. Inc. Sec. Litig. stated that (1) "the lodestar method is too cumbersome and time-consuming of the resources of the Court"; and (2) "more importantly, the 'percentage of the fund' approach more accurately reflects the result achieved." 1999 U.S. Dist. LEXIS 11090, * 8 (internal quotes and citations omitted). For these reasons, the Court will apply the percentage-of-the-fund method which is consistent with the majority trend.

The question before the Court is what percentage of the common fund to award as attorneys' fees. Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created." Brotherton v. Cleveland, 141 F. Supp.2d 907, 910 (S.D. Ohio 2001). See also In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005)(citing In re Rite Aid Corp. Sec. Litig., 146 F. Supp.2d 706, 735 (E.D. Pa. 2001)( a one-third fee from a common fund case has been found to be typical by several courts)); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir.) (In common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"), cert. denied, 516 U.S. 824 (1995); In re Xcel Energy, Inc., Securities

Litigation, 364 F. Supp. 2d 980 (D. Minn. 2005)(courts "frequently award[] attorney fees between twenty-five and thirty-six percent of a common fund in . . . class actions").

Courts in the Sixth Circuit evaluate the reasonableness of a requested fee percentage award using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. Bowling, 102 F.3d at 780; Rawlings, 9 F.3d at 516- 17; Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir.1983).

*2. Discussion*

Class counsel in both cases request an attorneys' fee award of 25 percent of the total settlement fund which represents a fee of $5.8 million of the $23.2 million settlement fund in the New England action and $4,775,000 of the $19.1 million settlement fund in the Fidel action. The Court finds the requested fee award in both actions reasonable. The factors articulated by the Sixth Circuit in Bowling support such an award.

Through the efforts of Plaintiffs' counsel, a substantial judgment of over $23.2 million in the New England action and over $19.1 million in the Fidel action were obtained on behalf of the Plaintiffs. Significantly, but for the efforts of Class representatives and Class counsel, there likely would have been no claim and no recovery. Plaintiffs' counsel took these cases on a contingency fee basis and invested a significant amount of time to this effort. Litigation lasted for over seven years in the New England action and over five in the Fidel action. The

time records submitted with the fee petitions indicate that Plaintiffs' counsel and their staff have spent over 19,000 hours in the New England action and over 7,850 hours in the Fidel action. Plaintiffs' counsel have analyzed over a million pages of document discovery and have taken at least 20 depositions. Compensation of their time at an hourly rate would result in a fee of $7,091,910 in the New England action and a fee of $3,341,021.75 in the Fidel action. The 25 percent fee request in the New England action is actually $1,291,910 less than the lodestar calculation. The 25 percent fee request in the Fidel action is equivalent to the lodestar calculation plus a 1.43 multiplier which does not appear to be uncommon in security litigation cases. See In re Cardizem CD Antitrust Litigation, 218 F.R.D. at 533. Clearly, Plaintiffs' counsel expended millions of dollars in attorney time and expenses in their prosecution of these cases over the past seven years bearing the risk of no recovery.

     Moreover, the complexity of these cases cannot be overstated. Securities litigation class actions are inherently complex. Given Fruit of the Loom's bankruptcy and the question of insurance coverage, these cases in particular presented a number of complicated factual and legal issues. Additionally, the Court finds that Plaintiffs' counsel are highly competent professionals with years of experience in litigating complex securities litigation. In fact, counsel on both sides demonstrated a high level of competence, experience, and skill. Finally, the notices of the proposed settlements disclosed that Plaintiffs' counsel would request a fee award in the amount of 25 percent of the total settlement fund. None of the Class members in the New England action filed an objection to the fee request and only one

of the over 17,000 Class members in the Fidel action filed an objection to the fee request.[3] The lack of objections from the Class supports the reasonableness of the fee request.

Taking into consideration the above factors, this Court awards Plaintiffs' Counsel 25 percent of the Settlement Fund in each action.

## B. Expenses

In addition to their request for attorneys' fees, Plaintiffs' counsel seek reimbursement of $1,483,746.63 in expenses in the New England action and $937,704.43 in expenses in the Fidel action. Under the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." In re Cardizem DC Antitrust Litigation, 218 F.R.D. at 535. In determining whether the requested expenses are compensable, the Court has considered "whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases." Id.

The Court finds that the categories of expenses for which Plaintiffs' counsel seek reimbursement are the type routinely charged to hourly fee-paying clients and thus should be reimbursed out of the settlement fund. A significant component of the expenses was the cost of experts and consultants. Plaintiffs' counsel's expenses also reflect cost associated

---

[3] As discussed above, on March 8, 2006, the Court received an untimely objection to the application for attorneys' fees in the Fidel action from Mr. James J. Hayes. Despite Mr. Hayes's objection, the Court finds the fee request reasonable.

with maintaining an electronic database; computerized research; travel and lodging expenses; photocopying cost; filing and witness fees; postage and overnight delivery; and the cost of court reporters and depositions.

Likewise, considering the declarations submitted by counsel in support of their request for reimbursements and the statements of counsel at the hearing, the Court finds that these expenses are reasonable. The amount of the attorneys' fees combined with the amount of expenses represent a combined fee/expense award of 31.4 percent of the settlement fund in the New England action and 29.9 percent of the settlement fund in the Fidel action. As noted above, a one-third fee from a common fund case has been found to be typical by several courts. See e.g., In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005)(citing In Re Rite Aid Corp. Sec. Litig., 146 F. Supp.2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fees percentage is shown as 31.71 %" with a median value that "turns out to be one-third.")). In fact, fee awards typically range from 20 to 50 percent of the common fund. Brotherton, 141 F. Supp. 2d at 910. Clearly, this combined fee/expense amount is within the typical range for attorneys' fee awards in common fund cases.

For these reasons, the Court is persuaded that these expenses are reasonable.

### C. Expenses to Lead Plaintiffs

Plaintiffs' counsel request an award of $5,000 for New England and $7,500 each for Bernard Fidel, Yitz Grossman and Stanley Mical for time and expenses. The Private Securities Litigation Reform Act of 1995 permits Lead Plaintiffs to recover reasonable costs

15

and expenses related to their representation of the class. 15 U.S.C. § 78u-4(a)(4). The Lead Plaintiffs in both actions have submitted declarations setting forth their time and actual expenses incurred. "Courts . . . routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." Hicks, 2005 WL 2757792, *10. For these reasons, the Court approves the reimbursement of expenses to Lead Plaintiffs, New England, Fidel, Grossman and Mical.

### IV. CONCLUSION

For the reasons set forth above, the Motions by Plaintiffs for Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Motions for an Award of Attorneys' Fees and Reimbursement of Expenses [DN 255, 1:98CV-99-M; DN 306, 1:00-CV-48-M] are granted. The Court approves the Settlement and Plan of Allocation in both the New England action and the Fidel action. In the New England action, Plaintiffs' counsel is awarded attorneys' fees in the amount of $5.8 million and expenses in the amount of $1,483,746.63. Lead Plaintiff New England is awarded $5,000 for reasonable costs and expenses. In the Fidel action, Plaintiffs' counsel is awarded attorneys' fees in the amount of $4,775,000 and expenses in the amount of $937,704.43. Lead Plaintiffs, Bernard Fidel,

Yitz Grossman and Stanley Mical, are awarded $7,500 each for reasonable costs and expenses. Orders and Judgments consistent with this Opinion will follow.

cc: counsel of record